UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

RHONDA G. MOZINGO,            )
                              )
        Plaintiff,            )
                              )
v.                            )    3:06-CV-279
                              )    (VARLAN/GUYTON)
MICHAEL J. ASTRUE,            )
Acting Commissioner           )
of Social Security,           )
                              )
        Defendant.            )

# REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the plaintiff's Motion For Judgment On The Pleadings To Reverse The Commissioner's Decision [Doc. 13], and the defendant's Motion For Summary Judgment [Doc. 17]. Plaintiff Rhonda G. Mozingo seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the defendant Commissioner.

The ALJ made the following findings:

1.  The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through [May 11, 2005].

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's depressive disorder, anxiety disorder, diabetes mellitus, fibromyalgia, obesity, and diabetic neuropathy are considered "severe" based on the requirements in the Regulations 20 C.F.R. § 404.1520(c) and 416.920(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. The claimant has no more than mild limitation in activities of daily living; mild limitation in maintaining social functioning and of the ability to sustain concentration, persistence or pace. There is no evidence that she experienced any episodes of mental decompensation, and she functions adequately outside of a highly supportive setting.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: to perform unskilled work at the sedentary and light exertional levels provided she does no frequent squatting, bending, or stooping; has no exposure to excessive pulmonary irritants; and avoids excessive vibrations. In addition, she cannot perform more than simple instructions.

7. The claimant is unable to perform any of her past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

| | | |
|---|---|---|
| 8. | The claimant is a "younger individual between the ages of 45 and 49" (20 C.F.R. §§ 404.1563 and 416.963). |
| 9. | The claimant has "a limited education" (20 C.F.R. §§ 404.1564 and 416.964). |
| 10. | The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 C.F.R. §§ 404.1568 and 416.968). |
| 11. | The claimant has the residual functional capacity to perform a significant range of light work (20 C.F.R. §§ 404.1567 and 416.967). |
| 12. | Although the claimant's exertional limitations do not allow her to perform the full range of light and sedentary work, using Medical-Vocational Rules 202.18 and 201.19 as a framework for decision making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs are cited in the body of this decision [textile folder, garment bagger, sorter, tablework fabricator, handbander or addresser]. |
| 13. | The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)). |

(Tr. 26-27).

If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Commissioner of Social Security, 375 F.3d 387 (6th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Siterlet v. Secretary of Health and Human

Services, 823 F.2d 918, 920 (6th Cir. 1987). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Secretary of Health and Human Services, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

Plaintiff argues that the ALJ erred in finding that she retained the residual functional capacity to perform a significant range of light work, for three reasons: (1) Evidence submitted to the Appeals Council, which had not been presented to the ALJ, proved disability; (2) The entire record, particularly the plaintiff's fibromyalgia, wasn't considered by the ALJ; and (3) The plaintiff's mental impairment was severe enough to warrant a finding of disability [Doc. 13].

The Commissioner asserts that substantial evidence supports the ALJ's residual functional capacity finding for light work[1]. The Commissioner further argues that (1) the new evidence presented only to the Appeals Council cannot be the basis for the Court to determine whether the ALJ's decision was based on substantial evidence; (2) the ALJ did consider the entire record; and (3) no mental impairment precluded the plaintiff from working.

A summary of the evaluations, reviews and opinions relied upon by the Commissioner is as follows:

The plaintiff was 46 years old when the ALJ issued a decision on May 11, 2005 (Tr. 25, 64, 452). She completed the eighth grade in school and had worked in the past as a certified nursing assistant (Tr. 20, 73, 97-98, 452). The plaintiff stopped working in December 2002, saying that she could not lift more than ten pounds and had trouble standing and walking for long periods

---

[1]Light work requires lifting and carrying 20 pounds occasionally and 10 pounds frequently. See 20 C.F.R. §§ 404.1567(b) and 416.967(b).

of time (Tr. 72, 127). She alleged disability due to diabetes, fibromyalgia, depression, anxiety, diabetic neuropathy and peripheral vessel disease (Tr. 72). She described pain "all over," and particularly in her neck, shoulders, hands, knees, legs and hips (Tr. 85, 115), and she said she experienced depression and anxiety, including trouble breathing, heart racing and crying spells, for which she took medication but received no mental health treatment (Tr. 89).

At the administrative hearing on December 14, 2004, the plaintiff testified that she experienced severe pain in her back, arms and neck (Tr. 457). She complained of neuropathy in her arms and legs, which caused numbness and resulted in her having difficulty grasping (Tr. 458). Because of leg pain, she said she could not sit or walk for very long, and she had assistance from her daughter with shopping and household chores like cooking, washing and laundry (Tr. 463). She testified that the medication she used for anxiety and depression helped, and that she saw a therapist twice a month (Tr. 462).

The plaintiff was seen by her family physician, Todd Chambers, M.D., on a regular basis through at least June 2003 for a variety of medical concerns, including aches and pains, depression and anxiety and diabetes management (Tr. 268-339). In November 2002, Dr. Chambers documented that the plaintiff was not following a diabetic diet or exercising, both of which he had told her to do (Tr. 278). He noted that she was "doing fairly well" with respect to depression, though she still had various complaints of pain and insomnia (Tr. 278). She was working the overnight shift from 10:00 p.m. to 6:00 a.m., and trying to sleep during the day (Tr. 278).

Dr. Chambers referred the plaintiff to Dr. Mukherji Bhaskar for further evaluation of her aches and pains, and Dr. Bhaskar examined her in November 2002 (Tr. 219-21). Dr. Bhaskar

5

observed normal pulses and temperature along with no swelling, varicosities or edema, with normal gait and station, full range of motion and full strength along with normal reflexes, normal coordination, normal sensation and no atrophy (Tr. 220). Dr. Bhaskar reviewed the plaintiff's x-rays, which showed no abnormalities (Tr. 220). He assessed likely fibromyalgia and recommended several adjustments in her medications (Tr. 220). He also prescribed physical therapy to work on stretching, strengthening and cardiovascular training (Tr. 220-21).

In December 2002, Dr. Chambers noted that the plaintiff had applied for disability, even though "the specialist" to whom he had sent her, did not recommend that she stop working (Tr. 276). In February 2003, Dr. Chambers reported that the plaintiff was walking three times a day; he also commented that, with respect to depression, she was "fairly happy," had "occasional" crying spells and "some" trouble with concentration, energy and interests, but she did not want to change her medications. He said she was "improved from where she was before" (Tr. 271). Dr. Chambers generally limited his examination to checking vital signs, examining the ears, nose and throat and listening to the heart and lungs; during examinations in 2003, he repeatedly noted normal respiratory effort and clear lungs, and he did not conduct a musculoskeletal examination (Tr. 269, 270, 271, 272, 274).

Dr. Joseph Johnson examined the plaintiff in March 2003 (Tr. 224-27). Dr. Johnson noted that the plaintiff looked tired, but she answered all questions appropriately and thoroughly, and her gross concentration level was normal (Tr. 225). His examination showed limited shoulder and back motion due to pain, but normal motor strength and normal reflexes (Tr. 226). The plaintiff had no sensation to pinprick in her feet and lower legs, and 16 of 18 trigger points were tender (Tr.

6

226). Her gait was "slightly slow" but she could walk on her toes and heels and did not become short of breath (Tr. 226). Dr. Johnson's assessment found diabetes mellitus, small vessel peripheral vascular disease, diffuse body aching and fatigue due to fibromyalgia, and obesity (Tr. 226). Dr. Johnson concluded that limitations related to employment were based mainly on fatigue, and that the plaintiff should be able to stand and walk for 90 minutes during an 8-hour work day, and could routinely lift 15 pounds and occasionally lift 20 pounds (Tr. 226-27).

Kathryn Smith, Ph.D., a Licensed Psychologist, evaluated the plaintiff in March 2003 (Tr. 228-31). The plaintiff told Dr. Smith that her physician placed her on medical leave and would not release her to return to work (Tr. 229). She described feeling depressed and anxious for about a year. The plaintiff acknowledged that her doctor had referred her to a therapist, but the plaintiff said she was not interested in pursing psychotherapy (Tr. 228). Dr. Smith diagnosed mood disorder secondary to chronic pain (Tr. 231). Dr. Smith said the plaintiff had the intellectual ability to do simple work with no difficulty, but might have some problems in work relationships due to irritability (Tr. 231). Dr. Smith said that the plaintiff could make simple decisions independently; could identify and avoid safety hazards; and could concentrate adequately to perform simple, repetitive tasks (Tr. 231).

State agency medical consultant Robert Burr, M.D., reviewed the record evidence in April 2003 (Tr. 232-39). He concluded that the plaintiff could lift 20 pounds occasionally and 10 pounds frequently, and could both stand/walk and sit for about six hours in an eight-hour work day (Tr. 233). Dr. Burr acknowledged that his opinion differed from Dr. Johnson's (Tr. 238). He explained that Dr. Johnson's limitations were too restrictive based on the minimal abnormal medical

7

findings (Tr. 234). Another state agency consultant reviewed the record with regard to the plaintiff's mental impairments, and concluded that she could sustain concentration over extended periods sufficient to perform simple tasks (Tr. 240-42).

In April 2003, the plaintiff asked Dr. Chambers for a note indicating that she could return to full duty without restrictions, because she "was turned down for disability today." Dr. Chambers provided a note to this effect (Tr. 273).

In July 2003, the plaintiff sought mental health counseling (Tr. 413-15). Licensed social worker Jean Patterson evaluated her and recommended a treatment plan that included individual therapy, case management and consultation with her primary physician (Tr. 414). In August 2003, the plaintiff saw psychiatrist Dawit Zemichael, M.D. (Tr. 411-12). She reported crying spells, irritability, nervousness and anxiousness and said her current medications were not helpful (Tr. 411). Dr. Zemichael diagnosed a mood disorder, noting that bipolar disorder could not be ruled out (Tr. 412). He recommended several adjustments in her medications and advised her to return in one month (Tr. 412). When she returned in September 2003, Dr. Zemichael reported that the plaintiff was alert, oriented and cooperative with fair eye contact (Tr. 420). The plaintiff reported some improvement. Dr. Zemichael again adjusted her medication and asked her to return in three months (Tr. 410).

In October 2003, Ms. Patterson wrote a letter, "to whom it may concern," outlining the plaintiff's diagnoses (major depression, panic disorder, generalized anxiety disorder and possible bipolar disorder) and describing the symptoms associated with such diagnoses (Tr. 416). Ms. Patterson wrote a similar letter in November 2004, indicating the plaintiff's diagnoses were

dysthymic disorder and generalized anxiety disorder and that the symptoms associated with those diagnoses caused clinically significant distress (Tr. 435). Ms. Patterson added that the plaintiff reported no energy, isolation, decreased interest in activities and an overall decrease in her ability to function (Tr. 435).

Vocational expert JoAnn Bullard ("Bullard") testified at the administrative hearing (Tr. 466-73). The ALJ asked Bullard to consider a hypothetical individual of the plaintiff's age, education, and past work experience, who could do light work exertionally, but due to various impairments could not handle excessive vibration; could not perform frequent bending, stooping or squatting; could not understand and carry out more than simple instructions; and could not be exposed to excessive dust, smoke, fumes or noxious gases (Tr. 467). Bullard testified that such an individual could adjust to several unskilled occupations in the light exertion range, including textile folder, garment bagger and sorter; over 16,000 such positions existed in the state of Tennessee (Tr. 468). Further, Bullard indicated that these occupations could be done by an individual who needed a sit/stand option (Tr. 471).

Bullard also testified that several occupations existed at the sedentary level of exertion that would accommodate the aforementioned limitations, including table worker (fabrication), hand bender and addresser; more than 1,000 such positions existed in the state of Tennessee, with over 47,000 existing nationally (Tr. 468). Bullard indicated that both the light and sedentary occupations identified did not require frequent contact with the general public, and that employers would normally allow two to three absences per month (Tr. 468-69).

9

The plaintiff has the burden of proving her entitlement to benefits. <u>Boyes v. Secretary of Health and Human Services</u>, 46 F.3d 510, 512 (6th Cir. 1994) (citing <u>Halsey v. Richardson</u>, 441 F.2d 1230 (6th Cir. 1971)). I find that in the present case the plaintiff has not met that burden.

The medical opinions support the ALJ's residual functional capacity ("RFC") finding for light work. Dr. Johnson, a consultative examiner, and Dr. Burr, a state agency reviewing doctor, provided the ALJ with well-supported opinions. 20 C.F.R. § 416.927(f)(2)(i) ("State agency medical and psychological consultants are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation"). <u>Rice v. Barnhart</u>. 384 F.3d 363, 370 (7th Cir. 2004) (ALJ was entitled to rely on the opinions of state agency doctors).

With regard to the plaintiff's psychological state, the ALJ is supported by the record evidence. The plaintiff was prescribed medication by her doctors for her mental impairments, but she did not require aggressive treatment, and she chose not to pursue therapy. According to Dr. Smith, the plaintiff displayed, during examination, adequate concentration and the intellectual ability to do simple work with no difficulty (Tr. 231). The ALJ's RFC findings in this area clearly are supported by substantial evidence.

As to physical capability, plaintiff argues that the entire record, particularly her fibromyalgia, wasn't considered by the ALJ. However, the ALJ specifically prefaces his findings by saying that he has carefully considered the entire record in this matter. This consideration by the ALJ is evidenced, among other things, by the ALJ's observation that none of the physicians who treated or examined the plaintiff suggested she was unable to work with appropriate restrictions,

even though such physicians were aware of a diagnosis of fibromyalgia (Tr. 24). Dr. Chambers released the plaintiff to unrestricted work (Tr. 273); Dr. Bhaskar recommended aggressive physical therapy (Tr. 220-21) and Dr. Burr and Dr. Johnson both indicated that the plaintiff was capable of working with restrictions (Tr. 226-27, 233-34). The Court agrees with the defendant that the mere diagnosis of fibromyalgia did not entitle the plaintiff to a finding of disability, particularly because fibromyalgia is "not usually disabling." Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998) (fibromyalgia is "not usually disabling" (citing Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996)).

Finally, the plaintiff can not rely on the evidence she submitted to the Appeals Council after the ALJ issued the unfavorable decision. The plaintiff submitted a three-page "Medical Opinion Form" completed by Dr. Chambers on May 25, 2005, two weeks after the ALJ issued his decision. The form consisted of multiple check-the-box questions, in which Dr. Chambers indicated that the plaintiff could not work a full eight-hour day (Tr. 444-46). The Appeals Council considered Dr. Chamber's opinion, but determined it did not provide a basis for changing the ALJ's decision (Tr. 9, 11).

This Court can not consider that evidence in determining whether substantial evidence supported the ALJ's decision. "[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." Cline v. Commissioner of Soc. Sec., 96 F.3d 146, 148 (1996); *see also* Cotton v. Sullivan, 2 F.3d 692 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Servs., 974 F.2d 680 (6th Cir. 1992).

11

The Court may consider evidence submitted for the first time to the Appeals Council only to determine whether it merits remand pursuant to the sixth sentence of 42 U.S.C. § 405(g). See Cline, 96 F.3d at 148. "Sentence six" of 42 U.S.C. § 405(g) permits a reviewing court to remand, without ruling on the merits, if new and material evidence is submitted and the claimant shows good cause for failing to submit the new evidence during the prior proceedings. 42 U.S.C. § 405(g) (sentence six). The plaintiff bears the burden of showing that a sentence-six remand is proper, Willis v. Secretary of Health and Human Servs., 727 F.2d 551, 553-54 (6th Cir. 1984). The plaintiff has not satisfied this burden, because the plaintiff has not established good cause for failing to present the subject evidence to the ALJ, and because the subject evidence is not material. To be material, there must be a "reasonable probability" that the ALJ would have reached a contrary disposition had he considered the evidence. Sizemore v. Secretary of Health and Human Servs., 865 F.2d 709, 711 (6th Cir. 1988). The check-the-box form completed by Dr. Chambers fails this test because it is conclusory, wholly unsupported, and inconsistent with the physician's prior statement that the plaintiff could be released to work without restrictions (Tr. 273). Therefore, the Court can not conclude that the ALJ would have found the plaintiff disabled had he considered the subject evidence. Sizemore, 865 F.2d at 711.

Accordingly, I find that the ALJ properly reviewed and weighed all of the medical source opinions, the objective medical findings, and plaintiff's credibility to determine that she could perform a range of light work. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[2] that the plaintiff's Motion For Judgment

---

[2]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such

On The Pleadings To Reverse The Commissioner's Decision [Doc. 13] be **DENIED** and that the

Commissioner's Motion For Summary Judgment [Doc. 17] be **GRANTED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).